**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TUBONIMI BOB-MANUEL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12 cv 00750 |
| | ) | |
| v. | ) | Judge Ruben Castillo |
| | ) | |
| CHIPOTLE MEXICAN GRILL, INC., | ) | Magistrate Judge Martin |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff, TUBONIMI BOB-MANUEL, by and through his attorneys, Franczek Radelet PC, and pursuant to leave of court, for his First Amended Complaint against Defendant, CHIPOTLE MEXICAN GRILL, INC., states as follows:

**Nature of Case**

1. Plaintiff brings this action against Defendant to recover damages proximately caused by Defendant's illegal discriminatory and/or retaliatory treatment during his employment and termination of his employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), Section 1981 of the Civil Rights Act of 1871, 42 U.S.C. § 1981 ("Section 1981"), and the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"); and illegal retaliatory discharge in violation of the Illinois Worker's Compensation Act, 820 ILCS 305/1 *et seq.*, and the common law and public policy of the State of Illinois.

1

**Jurisdiction and Venue**

2. This Court has original jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331, and 28 U.S.C. § 1343, and 42 U.S.C. § 1981.

3. This Court has supplemental jurisdiction over Plaintiff's Illinois common law claim pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because Defendant's illegal acts complained of herein took place at Defendant's Oak Park, Illinois restaurant located within the geographical jurisdictional boundaries of this Court.

5. On March 5, 2010, Plaintiff Tubonimi Bob-Manuel (hereafter "Tubonimi") filed his initial timely charge of illegal discrimination and retaliation with the local district office of the EEOC, Charge No. 440-2010-02723, a copy of which is attached hereto as Tab A.

6. On September 23, 2011, following Defendant's March 2011 termination of his employment, Tubonimi timely amended his initial Charge No. 440-2010-02723 to add his illegal termination claim, a copy of which is attached hereto as Tab B.

7. On November 3, 2011, the EEOC issued its Notice of Right to Sue in connection with Tubonimi's Charge No. 440-2010-02723, a copy of which is attached hereto as Tab C. This case is being filed within 90 days of Tubonimi's receipt of the EEOC Right to Sue Notice.

**The Parties**

8. Tubonimi is a 55-year-old, Nigerian-born, United States citizen of the Black race residing at all relevant times in the Village of Hillside, Cook County, Illinois.

9. At all times relevant hereto, Defendant Chipotle Mexican Grill, Inc., (hereafter "Chipotle"), was a foreign corporation licensed to conduct business in Illinois and operating numerous retail restaurants within Illinois and within the jurisdiction of this Court.

10. Chipotle at all relevant times employed in excess of 100 persons at its various restaurants, offices and other facilities within this Court's geographical jurisdiction, and thus was and is an employer and covered entity as defined under Title VII, the ADEA, and the ADA.

**Pertinent Facts**

11. Tubonimi started employment with Chipotle in November 2008 as an Associate/Management Trainee in its Oak Park, Illinois, restaurant.

12. Within several weeks of his start, Chipotle terminated Tubonimi's management training stating to him that the company was suspending the management trainee program.

13. A significantly younger, Caucasian, presumably American-born employee who started as Associate/Management Trainee at the same time as Tubonimi was allowed to continue training and ultimately promoted to General Manager of a different area Chipotle restaurant.

14. Thereafter, at least two other significantly younger, Caucasian, presumably American-born and non-disabled employees were hired and trained as managers one of which Chipotle promoted to a management position.

15. Tubonimi was thereafter subjected to different, less favorable terms and conditions of employment than other Associates including, but not limited to, being primarily assigned to work back office jobs such as dishwasher and food prep, having his work hours cut, having his performance scrutinized closer, not getting his job performance reviewed on a timely basis, not getting breaks from work, disregarding his medical work restrictions, and being subjected to harsher application of work rules including attendance and tardiness rules.

16. In or around early 2009, Tubonimi began complaining to various management employees that he believed the different lass favorable treatment he was receiving was because of his race, national origin and/or age.

17. In or about mid-2009, Tubonimi developed high blood pressure as a result of work-related stress resulting from the differential, less favorable treatment he received. Tubonimi also developed kidney disease and congenital heart failure as a result of the high blood pressure.

18. In or about late 2009 or early 2010, Tubonimi developed a hernia as a result of frequently having to lift garbage cans at work weighing approximately 80 to 100 pounds.

19. In or about mid-2010, Tubonimi developed eye disease, which severely limited his ability to see out of his right eye.

20. These medical conditions constituted physical impairments that substantially limited Tubonimi in one or more major life activities, including but not limited to lifting, working, seeing, and performing manual tasks.

21. Tubonimi informed his supervisors at Chipotle of these medical conditions upon being diagnosed with them, and subsequently provided documentation from his doctors regarding his medical work restrictions and requested reasonable accommodations with respect to fulfilling his job duties.

22. After learning of Tubonimi's medical conditions and associated work restrictions, Chipotle did not discuss the medical work restrictions with him or accommodate him by, e.g., allowing him to stop lifting the heavy garbage cans, take breaks, or sit down after a certain length of time.

895585.5

23. In or about late 2009 or early 2010, Tubonimi met with a Chipotle HR representative and other managers and again complained that he had been subjected to the aforementioned less favorable treatment and actions because of his race, national origin, age, and/or disability.

24. Tubonimi also filed a written complaint with Chipotle's Human Resources Department in or about March 2010 complaining of less favorable treatment and actions because of his race, national origin, age, and/or disability.

25. Tubonimi is not aware that Chipotle investigated his complaints, or took any reasonable action to stop such disparate treatment.

26. In December 2010, Tubonimi slipped and fell at work seriously injuring his left hip and right arm (hereafter the "workplace accident").

27. Tubonimi immediately reported the workplace accident to Chipotle, who in turn reported it to its workers' compensation insurance carrier.

28. Tubonimi thereafter received medical treatment and related therapy for the injuries he sustained in the workplace accident, was examined numerous times by Chipotle's clinic physician, and was off of work for a period of approximately 4 to 6 weeks.

29. After his return to work, Tubonimi asked the then store General Manager for compensation for the period of time that missed work because of the workplace accident.

30. On March 11, 2011, Chipotle terminated Tubonimi's employment for alleged (and pretexual) charges of failure to follow directions and/or insubordination.

31. Tubonimi's job performance at all relevant times met or exceeded Chipotle's legitimate expectations.

32. Tubonimi was at all relevant times qualified to perform the essential functions of his position.

**Count I: Race Discrimination in Violation of Title VII**

33. Tubonimi restates and fully incorporates into Count I his allegations set forth in Paragraphs 1 through 32, above.

34. Title VII makes it unlawful to discriminate against any individual in the terms, conditions or privileges of employment on the basis of his or her race.

35. Chipotle failed to promote Tubonimi and subjected him to the above-described less favorable terms and conditions of employment, failed to take proper steps to address Tubonimi's complaints of discrimination and harassment, and terminated his employment because of his race in violation of Title VII.

36. Chipotle treated similarly-situated, non-Black employees more favorably than Tubonimi.

37. As a direct and proximate result of Chipotle's illegal race discrimination as described above, Tubonimi has suffered mental and physical pain and anguish, a loss of wages, including, but not limited to, salary, bonuses, a loss of employment benefits and other pecuniary and non-pecuniary damages.

38. Chipotle knew that its discriminatory acts as described above were prohibited by Title VII, or acted with reckless disregard to that possibility.

**Count II: National Origin Discrimination in Violation of Title VII**

39. Tubonimi restates and fully incorporates into Count II his allegations set forth in Paragraphs 1 through 38, above.

40. Title VII makes it unlawful to discriminate against any individual in the terms, conditions or privileges of employment on the basis of his or her race.

41. Chipotle failed to promote Tubonimi and subjected him to the above-described less favorable terms and conditions of employment, failed to take proper steps to address Tubonimi's complaints of discrimination and harassment, and terminated his employment because of his national origin in violation of Title VII.

42. Chipotle treated similarly-situated, non-Nigerian employees more favorably than Tubonimi.

43. As a direct and proximate result of Chipotle's illegal national origin discrimination as described above, Tubonimi has suffered mental and physical pain and anguish, a loss of wages, including, but not limited to, salary, bonuses, a loss of employment benefits and other pecuniary and non-pecuniary damages.

44. Chipotle knew that its discriminatory acts as described above were prohibited by Title VII, or acted with reckless disregard to that possibility.

## Count III: Race, Color and/or Ethnicity Discrimination
## in Violation of Section 1981

45. Tubonimi restates and fully incorporates into Count III his allegations set forth in Paragraphs 1 through 44, above.

46. Section 1981 makes it unlawful for an employer such as Chipotle to discriminate against any person in the terms and privileges of employment, or to take any adverse action against any person because of his or her race, color or ethnicity.

47. Chipotle failed to promote Tubonimi and subjected him to the above-described less favorable terms and conditions of employment, failed to take proper steps to address Tubonimi's complaints of discrimination and harassment, and terminated his employment because of his race, color and/or ethnicity in violation of Section 1981.

48. Chipotle treated similarly-situated employees not born Nigeria, or not descendants of Nigerians more favorably than Tubonimi.

49. Chipotle knew that its discriminatory acts as described above were prohibited by Section 1981, or acted with reckless disregard to that possibility.

**Count IV: Retaliation in Violation of Title VII**

50. Tubonimi restates and fully incorporates into Count IV his allegations set forth in Paragraphs 1 through 49, above.

51. Title VII makes it unlawful for an employer to discriminate against an employee because he or she has opposed any practice made an unlawful employment practice by Title VII, or made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

52. Tubonimi in good faith believed that above-described less favorable terms and conditions of employment that he was subjected to were illegal workplace discrimination and/or harassment.

53. As described above, Tubonimi's complaints to Chipotle and March 2010 EEOC charge against Chipotle were protected opposition and participation activity under Title VII.

54. Chipotle failed to promote Tubonimi and subjected him to the above-described less favorable terms and conditions of employment, failed to take proper steps to address Tubonimi's complaints of discrimination and harassment, and terminated his employment because of his protected activity in violation of Title VII.

55. Chipotle treated similarly-situated, non-complaining and/or non-charge filing employees more favorably than Tubonimi.

56. As a direct and proximate result of Chipotle's illegal retaliation as described above, Tubonimi has suffered mental and physical pain and anguish, a loss of wages, including,

895585.5

but not limited to, salary, bonuses, a loss of employment benefits and other pecuniary and non-pecuniary damages, and he is expected to incur future damages.

57. Chipotle knew that its retaliatory acts as described above were prohibited by Title VII, or acted with reckless disregard to that possibility.

### Count V: Age Discrimination in Violation of the ADEA

58. Tubonimi restates and fully incorporates into Count V his allegations set forth in Paragraphs 1 through 57, above.

59. It is unlawful under the ADEA for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; or, to limit, segregate, or classify its employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's age. See 29 U.S.C. § 623(a).

60. Chipotle failed to promote Tubonimi and subjected him to the above-described less favorable terms and conditions of employment, failed to take proper steps to address Tubonimi's complaints of discrimination and harassment, and terminated his employment because of his age in violation of the ADEA.

61. Chipotle treated similarly-situated, significantly younger employees more favorably than Tubonimi.

62. As a direct and proximate result of Chipotle's illegal discrimination as described above, Tubonimi has lost, and is expected to continue to lose, income in the form of wages and prospective retirement benefits, social security and other benefits in a sum to be proven at trial, and has suffered emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

63. Chipotle knew that its discriminatory acts were prohibited by the ADEA, or acted with reckless disregard to that possibility.

### Count VI: Retaliatory Discharge in Violation of the Illinois Workers' Compensation Act, and Illinois Common Law and Public Policy

64. Tubonimi restates and fully incorporates into Count VI his allegations set forth in Paragraphs 1 through 63, above.

65. Tubonimi's workplace accident and related injuries and medical treatment, as well as his requests to be compensated for the time he missed work due to the workplace accident, all as described above, are activities protected by the Illinois Worker's Compensation Act, 820 ILCS 305/1 et seq. (the "Act").

66. Chipotle was well aware of Tubonimi's protected activities under the Act when it decided to terminate his employment.

67. Chipotle terminated Tubonimi's employment in retaliation for his protected activities under the Act.

68. As a direct and proximate result of Chipotle's illegal retaliation against Tubonimi, he has suffered a loss of wages, including but not limited to salary, bonuses, a loss of employment benefits and other pecuniary and non-pecuniary damages.

69. The above described retaliatory conduct by Chipotle was willful and wanton, and with reckless disregard and indifference to the law and the public policy of Illinois, and to Tubonimi's rights. Chipotle should therefore be subject to punitive damages as an example to deter others from engaging in conduct of this kind.

### Count VII: Retaliation in Violation of the ADEA

70. Tubonimi restates and fully incorporates into Count VII his allegations set forth in Paragraphs 1 through 69, above.

71. Tubonimi in good faith believed that he was subjected to less favorable terms and conditions of employment as described above, and that these actions by Chipotle constituted illegal workplace discrimination and/or harassment.

72. As described above, Tubonimi's complaints to Chipotle and his March 2010 EEOC charge against Chipotle were protected opposition and participation activity under the ADEA.

73. Chipotle failed to promote Tubonimi and subjected him to the above-described less favorable terms and conditions of employment, failed to take proper steps to address Tubonimi's complaints of discrimination and harassment, and terminated his employment because of and in retaliation for his protected activity, in violation of the ADEA.

74. Chipotle treated similarly-situated, non-complaining and/or non-charge filing employees more favorably than Tubonimi.

75. Chipotle knew that its retaliatory acts as described above were prohibited by the ADEA, or acted with reckless disregard to that possibility.

76. As a direct and proximate result of Chipotle's illegal retaliation as described above, Tubonimi has suffered mental and physical pain and anguish; a loss of wages, including, but not limited to, salary, bonuses, a loss of employment benefits; and other pecuniary and non-pecuniary damages; and he is expected to incur future damages.

### Count VIII: Discrimination in Violation of the ADA

77. Tubonimi restates and fully incorporates into Count VIII his allegations set forth in Paragraphs 1 through 76 above.

78. The ADA makes it unlawful to discriminate against any qualified individual in the terms, conditions or privileges of employment on the basis of his or her disability.

79. As described above, Tubonimi was at all relevant times a qualified individual entitled to the statutory protection of the ADA in that he suffers from physical impairments that substantially limit him in one or more major life activities.

80. Chipotle failed to promote Tubonimi and subjected him to the above-described less favorable terms and conditions of employment, failed to take proper steps to address Tubonimi's complaints of discrimination and harassment, and terminated his employment because of his disability in violation of the ADA.

81. Chipotle treated similarly-situated, non-disabled employees more favorably than Tubonimi.

82. Chipotle knew that its discriminatory acts as described above were prohibited by the ADA, or acted with reckless disregard to that possibility.

83. As a direct and proximate result of Chipotle's illegal disability discrimination as described above, Tubonimi has suffered mental and physical pain and anguish; a loss of wages, including, but not limited to, salary, bonuses, a loss of employment benefits; and other pecuniary and non-pecuniary damages; and he is expected to incur future damages.

### Count IX: Failure to Accommodate in Violation of the ADA

84. Tubonimi restates and fully incorporates into Count IX his allegations set forth in Paragraphs 1 through 83, above.

85. As described above, Tubonimi was at all relevant times a qualified individual entitled to the statutory protection of the ADA in that he suffers from physical impairments that substantially limit him in one or more major life activities.

86. Despite the fact that Tubonimi advised Chipotle of his disabilities and provided supporting documentation from his doctors of his medical work restrictions, Chipotle failed to

provide a reasonable accommodation to Tubonimi and failed to engage in an "interactive process" with Tubonimi.

87. Chipotle knew that its discriminatory acts as described above were prohibited by the ADA, or acted with reckless disregard to that possibility.

88. As a direct and proximate result of Chipotle's illegal disability discrimination as described above, Tubonimi has suffered mental and physical pain and anguish; a loss of wages, including, but not limited to, salary, bonuses, a loss of employment benefits; and other pecuniary and non-pecuniary damages; and he is expected to incur future damages.

**Count X: Retaliation in Violation of the ADA**

89. Tubonimi restates and fully incorporates into Count X his allegations set forth in Paragraphs 1 through 88, above.

90. Tubonimi in good faith believed that he was subjected to less favorable terms and conditions of employment as described above, and that these actions by Chipotle constituted illegal workplace discrimination and/or harassment.

91. As described above, Tubonimi's complaints and requests for accommodation to Chipotle, and his March 2010 EEOC charge against Chipotle, were protected opposition and participation activity under the ADA.

92. Chipotle failed to promote Tubonimi and subjected him to the above-described less favorable terms and conditions of employment, failed to take proper steps to address Tubonimi's complaints of discrimination and harassment, failed to accommodate Tubonimi's medical work restrictions, and terminated his employment because of and in retaliation for his protected activity, in violation of the ADA.

93. Chipotle treated similarly-situated, non-complaining and/or non-charge filing employees more favorably than Tubonimi.

94. Chipotle knew that its retaliatory acts as described above were prohibited by the ADA, or acted with reckless disregard to that possibility.

95. As a direct and proximate result of Chipotle's illegal retaliation as described above, Tubonimi has suffered mental and physical pain and anguish; a loss of wages, including, but not limited to, salary, bonuses, a loss of employment benefits; and other pecuniary and non-pecuniary damages; and he is expected to incur future damages.

**Prayer for Relief Common to all Counts**

**WHEREFORE**, Plaintiff TUBONIMI BOB-MANUEL respectfully requests that this Court enter judgment in his favor and against Defendant CHIPOTLE MEXICAN GRILL, INC., as follows:

A. Order Defendant to make Tubonimi whole by paying him appropriate back pay and reimbursement for lost pension, social security and other benefits and out-of-pocket expenses, plus pre-judgment interest in an amount to be shown at trial;

B. Order Defendant to immediately reinstate Tubonimi to his former position or one comparable thereto; or, in the alternative, order Defendant to pay Tubonimi an appropriate amount of front pay;

C. Order Defendant to pay Tubonimi compensatory damages in the maximum amount allowable under the law;

D. Order Defendant to pay Tubonimi punitive damages in the maximum amount allowable under the law;

E. Order Defendant to pay Tubonimi's costs incurred in bringing this action, including, but not limited to, expert witness fees and reasonable attorneys' fees;

F. Try all issues of fact to a jury; and,

    G.    Grant such other relief as the Court deems just.

        Respectfully submitted,

        TUBONIMI BOB-MANUEL


        By:  /s/ Lindsey M. Marcus – 6297111
            lmm@franczek.com


David P. Radelet - 6181286
dpr@franczek.com
Lindsey M. Marcus - 6297111
Franczek Radelet PC
300 South Wacker Drive
Suite 3400
Chicago, IL 60606
(312) 986-0300

Dated:  January 15, 2013

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that she caused a true and correct copy of the foregoing **PLAINTIFF'S FIRST AMENDED COMPLAINT** to be served upon counsel of record via filing with the CM/ECF system on this 15th day of January, 2013:

> Tanya E. Milligan
> Jacqueline Guesno
> Messner & Reeves, LLC
> 1430 Wynkoop Street
> Suite 300
> Denver, Co 80202
>
> Cynthia Alkhouja
> David Stein
> Pretzel & Stouffer, Chartered
> One South Wacker Drive
> Suite 2500
> Chicago, IL 60606

        /s/ Lindsey M. Marcus - 6297111
        Lindsey M. Marcus

895585.5