UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Tubonimi Bob-Manuel, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12 cv 750 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| Chipotle Mexican Grill, Inc., | ) | |
| | ) | Magistrate Judge Martin |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO SUMMARY JUDGMENT**

David P. Radelet – 6181286
dpr@franczek.com
Lindsey M. Marcus – 6297111
lmm@franczek.com
Franczek Radelet P.C.
300 South Wacker Drive
Suite 3400
Chicago, IL 60606
(312) 986-0300

Dated:   October 4, 2013

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ iii

I.    FACTUAL BACKGROUND ..............................................................................1

II.   ARGUMENT ......................................................................................................2

    A.    Plaintiff Has Raised an Issue of Material Fact as to Whether the Failure to Promote or Train Him Was Discriminatory and/or Retaliatory.........................3

        1.    Plaintiff's Evidence Raises an Inference that He Was Not Trained or Promoted Because of His Race, National Origin, Age, and/or Disability................................................................................................4

            a.    Chavez's Statements and Treatment of Plaintiff and Other African-American Employees Precludes Summary Judgment ...............4

            b.    Fabricated or Otherwise Defective Documentation of Plaintiff's Alleged Performance Issues Precludes Summary Judgment......................................................................................6

            c.    Disputed Facts Regarding the Position Plaintiff Was Hired For Preclude Summary Judgment .....................................................8

            d.    Defendant's Arguments Contesting Plaintiff's Failure-to-Train and Failure-to-Promote Claims Have No Merit.........................9

        2.    Plaintiff's Evidence Raises an Inference that He Was Not Trained or Promoted Because of His Complaints about Discriminatory Treatment ........................................................................................11

    B.    Plaintiff Has Raised Issues of Material Fact as to Whether His Termination Was Discriminatory and/or Retaliatory ..........................................................13

        1.    Plaintiff's Evidence Raises an Inference that He Was Terminated Because of His Race, National Origin, Age and/or Disability............................13

          a.      The Events Alleged in Plaintiff's Termination Memo Are Disputed ...................................................................................13

          b.      Defendant's Managers Disagree About Who Decided to Terminate Plaintiff and Why He Was Terminated .....................................14

     2.     Plaintiff's Evidence Raises an Inference that He Was Terminated Because of His Complaints About Discriminatory Treatment...........................16

 C.    Plaintiff Has Raised Issues of Material Fact as to Whether Defendant Discriminated Against Him Based on His Disability and Failed to Accommodate His Medical Restrictions .........................................................18

     1.     Plaintiff Raises Factual Issues As to His Disability Discrimination Claim....................................................................................................18

          a.      Plaintiff Is Disabled ...............................................................18

          b.      Defendant Took an Adverse Action Due to Plaintiff's Disability...............................................................................21

     2.     Plaintiff Raises Factual Issues as to His Failure-to-Accommodate Claim....................................................................................................21

          a.      Plaintiff's Failure-to-Accommodate Claim Is Adequately Pled ........................................................................................21

          b.      Defendant Failed to Reasonably Accommodate Plaintiff.........22

 D.    Plaintiff Has Raised Issues of Material Fact as to Whether Defendant Terminated Him Because of His Claim for Workers' Compensation Benefits ...............................................................................................................24

III.    CONCLUSION....................................................................................................25

1003389.3

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Anderson v. Liberty Lobby,* 477 U.S. 242 (1986) ....................................................................2

*Apke v. Ernst & Young*, 90-CV-3041, 1992 WL 435800, *8 (N.D. Ill. Nov. 4, 1992) ............15

*Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781 (7th Cir. 2007) ....................................8, 24

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ........................................................................2

*Cloe v. City of Indianapolis*, 712 F.3d 1171 (7th Cir. 2013) ...............................................4, 19

*Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012)..................................................................3

*Darchak v. Bd. Of Educ. Of City of Chi.*, 580 F.3d 622 (7th Cir. 2009) ....................................5

*Davis v. Am. Drug Stores, Inc.,* No. 01 C 3704, 2003 WL 21149063
    (N.D. Ill. May 19, 2003) ........................................................................................4

*E.E.O.C. v. AutoZone, Inc.,* 630 F.3d 635 (7th Cir. 2010)........................................................19

*E.E.O.C. v. C.G. Schmidt, Inc.,* 670 F. Supp. 2d 858 (E.D. Wis. 2009).............................15, 16

*E.E.O.C. v. Sears, Roebuck & Co.,* 417 F.3d 789 (7th Cir. 2005).............................................23

*Estate of Moreland v. Dieter*, 395 F.3d 747 (7th Cir. 2005)......................................................4

*Feldman v. Olin Corp.,* 692 F.3d 748 (7th Cir. 2012), *reh'g denied* (Oct. 4, 2012)...........19, 20

*Gile v. United Airlines, Inc.*, 213 F.3d 365 (7th Cir. 2000) ....................................................23

*Gore v. U.S. Postal Serv.,* IP99-1353-C-M/S, 2000 WL 33281134
    (S.D. Ind. Nov. 6, 2000).....................................................................................9, 10

*Hasan v. Foley & Lardner LLP*, 552 F.3d 520 (7th Cir. 2008)..................................................6

*Heatherly v. Portillo's Hot Dogs, Inc.,* 11 C 8480, 2013 WL 3790909, *6 (N.D. Ill. July 19,
2013) ..........................................................................................................20, 21

*Hill v. Potter*, 625 F.3d 998 (7th Cir. 2010) ........................................................................21

iii

*Hobgood v. Illinois Gaming Bd.*, 722 F.3d 1030 (7th Cir. 2013) .......................................3, 11

*Horgan v. Simmons*, 704 F. Supp. 2d 814 (N.D. Ill. 2010) ......................................................19

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966 (7th Cir. 2012) .................3

*Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871 (7th Cir. 2002) ......................................2

*Kristufek v. Hussmann Foodservice Co., Toastmaster Div.*, 985 F.2d 364 (7th Cir. 1993) .....22

*Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312 (7th Cir. 2011). ........................................25

*Malozienc v. Pacific Rail Servs.*, 606 F. Supp. 2d 837 (N.D. Ill. 2009) ....................................9

*Paluck v. Gooding Rubber Co.*, 221 F.3d 1003 (7th Cir. 2000) ...............................................17

*Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d at 840 (7th Cir. 2007).......................13, 15

*Patmythes v. City of Janesville*, 181 F. App'x 596 (7th Cir. 2006)...........................................16

*Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003).......................................................................13

*Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, 464 F.3d 659 (7th Cir. 2006)...........2, 6, 12

*Perdomo v. Browner*, 67 F.3d 140 (7th Cir. 1995) ....................................................................3

*Rudin v. Lincoln Land Comm. Coll.*, 420 F.3d 712 (7th Cir. 2005) ...........................................7

*Rush v. McDonald's Corp.*, 966 F.2d 1104 (7th Cir.1992).......................................................22

*Scott-Riley v. Mullins Food Prods., Inc.*, 391 F. Supp. 2d 707 (N.D. Ill. 2005) ......................25

*Sebastian v. City of Chicago*, 05 C 2077, 2008 WL 2875255, *22
(N.D. Ill. July 24, 2008).................................................................................................15

*Siekierka v. United Steel Deck, Inc.*, 868 N.E.2d 374 (Ill. App. 1st Dist. 2007) ......................25

*Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852 (7th Cir. 2010) ...........................22

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013)................................................12

iv

*Wamack v. Windsor Park Manor*, 836 F. Supp. 2d 793 (N.D. Ill. 2011) ............................4, 22

*Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018 (8th Cir. 1998) ......................................15

## Federal Rules

Fed. R. Civ. P. 56(a) ............................................................................................................2

## Statutes

29 C.F.R. § 1630.1(c)(4) ...............................................................................................19, 20

29 C.F.R. § 1630.2(j)(ix) ......................................................................................................20

29 C.F.R. § 1630.2(i)(1)(i) ....................................................................................................20

29 C.F.R. § 1630.2(j)(1)(ii) ...................................................................................................20

29 C.F.R. § 1630.2(j)(l)(iii) ...................................................................................................19

29 C.F.R. § 1630.2(j)(1)(v) ...................................................................................................19

42 U.S.C. § 12102(1)(A)-(C) ................................................................................................19

v

## I.     FACTUAL BACKGROUND[1]

Plaintiff was hired by Defendant at its Oak Park, Illinois location in November 2008 as a general manager trainee by then-General Manager Robert Ruggiero. Pl. Resp. to Def. SOF ¶ 10; SAF ¶ 27.[2] His training was stopped shortly after he started working for Defendant, and he was relegated to the "prep" station in the back of the house. SAF ¶ 29. Thereafter, General Manager Jeanine Cruz Chavez, who became Plaintiff's supervisor after Ruggiero's termination, continued to fail to train or promote him, and otherwise discriminated against him, on the basis of his race, national origin, age, and/or disability.

In late 2009 and/or early 2010, Plaintiff complained to Human Resources ("HR") about Chavez's discriminatory treatment. *Id.* ¶ 41. He then filed a charge with the Equal Employment Opportunity Commission ("EEOC") on March 5, 2010. Amended Complaint ("Am. Cp."), Tab 1, Ex. A. Because Plaintiff made these complaints, Chavez decided Plaintiff "had to go," told her subordinate managers to document everything Plaintiff did wrong, nor matter how minor, and waged a campaign of retaliation that prevented him from being trained or promoted and from receiving a raise. SAF ¶¶ 42-45. Additionally, after Plaintiff's complaints, Chavez's supervisor, Area Manager Vicki Autry Kubicki, told managers at the Oak Park restaurant to document any incident involving Plaintiff and that Plaintiff had filed a lawsuit against Defendant. *Id.* ¶ 53. Then-Central Region HR Director Michael Triola – who testified that he never met Plaintiff and did not personally monitor Plaintiff's performance after he filed his EEOC charge – was also keeping careful track of Plaintiff's situation and gathering and drafting documentation about Plaintiff. *Id.* ¶¶ 20, 62-63.

---

[1] A complete factual background appears in Plaintiff's L.R. 56.1(b)(3) Statement of Additional Facts.

[2] Plaintiff's L.R. 56.1(b)(3) Statement of Additional Facts is referred to as "SAF"; Plaintiff's Response to Defendant's L.R. 56.1(a) Statement of Facts is referred to as "Pl. Resp. to Def. SOF."; Defendant's Memorandum of Law in Support of its Motion for Summary Judgment is referred to as "Def. Br."

Defendant claims that Plaintiff committed several infractions in late February and early March 2011, after which he was terminated on March 11, 2011. Pl. Resp. to Def. SOF ¶¶ 39-41. Although Plaintiff received a memo explaining why he was terminated, Defendant has subsequently provided inconsistent reasons for Plaintiff's termination. SAF ¶ 61. Moreover, Kubicki and Triola even disagree on who decided to terminate Plaintiff. *Id.* ¶ 59-60.

## II.    ARGUMENT

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there exists no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The evidence is viewed in the light most favorable to the non-movant and "all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby,* 477 U.S. 242, 255 (1986). On summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006). The summary judgment standard is applied "with special scrutiny in employment discrimination cases, which often turn on issues of intent and credibility." *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002).

Here, Plaintiff may prove his case using the direct or indirect, burden-shifting method of proof. Under the direct method, Plaintiff may present direct or circumstantial evidence of discrimination. The latter requires him to put forth a "convincing mosaic" of evidence from which an inference of discriminatory or retaliatory intent could be drawn, and may include: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside

of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action. *Hobgood v. Ill. Gaming Bd.*, 722 F.3d 1030, 1038 (7th Cir. 2013) (quotation omitted).

To establish a prima facie case using the indirect method of proof, plaintiff must offer evidence that: (1) he is a member of a protected class, (2) his job performance met the employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (quotation omitted). The burden then shifts to the defendant to articulate a legitimate reason for the adverse action. If the employer does so, the burden shifts back to the plaintiff to present evidence that the stated reason is a pretext, which permits an inference of unlawful discrimination. *Id.*

Thus, under either method, evidence of pretext – which "means a lie, specifically a phony reason for some action" – may defeat summary judgment. *Perdomo v. Browner*, 67 F.3d 140, 145 (7th Cir. 1995) (citation omitted); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 973 (7th Cir. 2012) ("we have recognized that circumstantial evidence of pretext offered as part of a direct method claim bears an eerie similarity to the evidence required under the indirect method") (internal quotation omitted). As discussed in further detail below, this case is rife with evidence of pretext, which creates issues of material fact and/or requires credibility determinations. As a result, Defendant's Motion must be denied.

### A. Plaintiff Has Raised Issues of Material Fact as to Whether the Failure to Promote or Train Him Was Discriminatory and/or Retaliatory

As an initial matter, Defendant asserts that Plaintiff's failure-to-train claim must be dismissed because Plaintiff did not plead such a claim in his EEOC charge. Def. Br. at 7 n.3.

Defendant's assertion fails for two reasons. First, since Defendant's "argument" is perfunctory and undeveloped, this Court should not consider it or any subsequent argument it may make. *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005); *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1182 (7th Cir. 2013) ("As a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision.") (internal quotation omitted). Second, Defendant's contention is wrong. Plaintiff's March 5, 2010 EEOC charge alleges, *inter alia*, "I was hired by Respondent in November, 2008 as an Associate/Management Trainee. My management training was stopped but the training for younger, non-Black, non-Nigerian Management Trainees continued." Am. Cp., Tab 1, Ex. A. Thus, by its express language, Plaintiff's charge alleges a failure to train.[3]

    1.    <u>Plaintiff's Evidence Raises an Inference that He Was Not Trained or Promoted Because of His Race, National Origin, Age, and/or Disability</u>

Defendant argues that Plaintiff was not cross-trained or promoted because he was not qualified and/or because he was not performing to its expectations. Since the record contains substantial evidence that these explanations are pretextual, summary judgment is improper.

    *a.*    *Chavez's Statements and Treatment of Plaintiff and Other African-American Employees Precludes Summary Judgment*

For most of Plaintiff's employment with Defendant, Chavez was his General Manager. Pl. Resp. to Def. SOF ¶ 11, 15. In that capacity, she made decisions about whom to train and

---

[3] Even if there were some question as to whether Plaintiff's charge contained a failure-to-train claim, it is clear from Plaintiff's Amended Complaint that the failure-to-train and failure-to-promote claims arise from the same core of operative facts, and are thus "like or reasonably related" to the allegations in the charge such that the Court may consider them. Am. Cp., Tab 1, ¶¶ 11-12 & Ex. A.; *Wamack v. Windsor Park Manor*, 836 F. Supp. 2d 793, 797 (N.D. Ill. 2011) (quotation omitted); *Davis v. Am. Drug Stores, Inc.*, No. 01 C 3704, 2003 WL 21149063 at *3 (N.D. Ill. May 19, 2003) (claim that was "mirror image" of another claim was viable even though it was not included in EEOC charge).

promote. *Id.* ¶ 4. Throughout the time Chavez managed Plaintiff, she made statements that give rise to an inference that she did not train or promote Plaintiff because of his age, race, national origin, and/or disability, including the following:

- Chavez explicitly stated that Plaintiff was not going to be promoted. *Id.* ¶ 1.

- Chavez called Plaintiff "Bobo" – a monkey's name – and made fun of his accent. *Id.* ¶ 2. As is well-known, calling an African-American a monkey is considered derogatory.[4]

- On one occasion after Chavez had terminated an African-American employee, Chavez told Plaintiff, "Bob, you're a survivor. I've been wanting to fire you." *Id.* ¶ 3.

- Chavez asked Plaintiff whether he was getting ready to retire. *Id.* ¶ 4. Erica Arrington, who worked with Plaintiff at Defendant's Oak Park restaurant as a crew member and then as manager, testified that Chavez showed a preference for younger workers because she believed that they could work faster, and said Plaintiff could not work as fast as everyone else and couldn't keep up. *Id.* ¶¶ 4, 6-8.

These statements constitute far more than "stray remarks," as Defendant asserts. Further, Chavez singled out Plaintiff for mistreatment. For example, she micromanaged Plaintiff on a daily basis by standing over him and watching him marinating meat; looking at the avocado peels in the garbage to be sure that Plaintiff had not wasted any avocado; and checking the size of the lettuce in the cooler that Plaintiff had cut. SAF ¶ 5. If Chavez's comments alone are not sufficient to create serious issues of material fact relating to her motive, the comments coupled with these actions constitute far more than enough grounds to deny summary judgment. *See, e.g., Darchak v. Bd. of Educ. of City of Chi.*, 580 F.3d 622, 631 (7th Cir. 2009) (comments coupled with adverse action suffice to satisfy plaintiff's burden).

Chavez also made statements that give rise to an inference that she was biased against African-Americans generally. For example, she told a newly-hired African-American employee,

---

[4]  *See, e.g.,*  http://www.authentichistory.com/diversity/african/3-coon/6-monkey/index.html  (tracing history of calling African-Americans monkeys to the antebellum South).

5

"I hope you don't get mad, but I like to make black jokes"; made derisive comments about Arrington's daughter who is half African-American; and told Arrington that it was inappropriate for Arrington to tell the crew at the Oak Park restaurant that if they did not like the African-American customers, they should not take those customers' tips. *Id.* ¶¶ 9-11. Chavez was ultimately terminated after several employees complained about her. *Id.* ¶ 12. The investigation leading to Chavez's termination found that two employees stated that she made racial jokes about African-Americans. *Id.* This evidence is clearly relevant to Plaintiff's mosaic of discrimination and supports an inference of discriminatory motive that is sufficient to withstand summary judgment. *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 529 (7th Cir. 2008) ("behavior toward or comments directed at other employees in the protected group is one type of circumstantial evidence that can support an inference of discrimination").

> b.  *Fabricated or Otherwise Defective Documentation of Plaintiff's*
> *Alleged Performance Issues Precludes Summary Judgment*

The documentation Defendant relies on to support its reasons for not training or promoting Plaintiff contains serious flaws which give rise to an inference of pretext in a number of different ways. First, on **11 occasions** when Plaintiff allegedly committed a violation of Defendant's policies or procedures – including the date he allegedly swore at his manager, the event that allegedly triggered his termination – he was not at work. *Id.* ¶ 13. It is simply incredible that Defendant could attempt to justify its decisions to deny Plaintiff training and promotion based on certain alleged incidents, when it is now apparent that Plaintiff was not even at work on some of the dates of the alleged infractions. The only logical inference is that these write-ups (and possibly others) were fabricated, and summary judgment is precluded on this basis alone. *Paz*, 464 F.3d at 665 ("Dishonesty alone could be a sufficient basis for a jury to conclude that a defendant is covering up a discriminatory motivation").

6

Second, documents relating to Plaintiff's alleged performance issues were not prepared in accordance with Defendant's policies. According to Defendant's policies and procedures, performance discussions and other documents evaluating an employee's performance are supposed to be discussed with the employee in a face-to-face meeting and the manager and employee are supposed to sign the document. If the employee refuses to sign, the manager is supposed to make a note or initial underneath where the employee was supposed to sign. SAF ¶ 14. Yet, none of the five performance discussions that Defendant claims were maintained in Plaintiff's personnel file were signed by a manager or Plaintiff. *Id.* ¶ 15; Pl. Resp. to Def. SOF ¶ 21, 22, 31, 36. When questioned about these deficiencies, Defendant admitted that Plaintiff may never have received the performance discussions. *Id.* Because the performance discussions were not issued in accordance with Defendant's procedure, they constitute additional circumstantial evidence of discrimination.[5] *Rudin v. Lincoln Land Comm. Coll.*, 420 F.3d 712, 723 (7th Cir. 2005). Further, Defendant admits that the performance discussion dated December 30, 2010 was erroneous since it involved days Plaintiff missed due to his workplace accident. *Id.* ¶ 16. The fact that Defendant took no steps to correct this improper write-up suggests that Defendant had an improper motive in issuing it.

Finally, the circumstances surrounding Plaintiff's May 2010 performance evaluation suggest that it too was pretextual. According to Defendant's procedures, a positive performance evaluation typically precedes a raise. SAF ¶ 19. If an employee receives a "Needs Improvement" ("NI") rating, he will not be entitled to a raise. *Id.* In May 2010, Triola – who testified that he never met Plaintiff and did not personally monitor Plaintiff's performance after Plaintiff filed his EEOC charge – reviewed a draft evaluation Chavez had prepared. *Id.* ¶ 20. The draft evaluation

---

[5] Chavez also allegedly gave Plaintiff a performance evaluation that had her signature, but no date or signature by Plaintiff. This evaluation was not given in accordance with Defendant's procedures. *Id.* ¶ 17.

gave Plaintiff a NI rating overall, and a NI rating in each category except one, in which he received a "Meets Expectations" ("ME") rating. *Id.* Triola suggested changing whatever appeared "inconsistent" or could be seen as "picking" on Plaintiff. *Id.* ¶ 21. With regard to the "Food" section, for example, Triola said he "would like to see specific examples that we can back up with documentation," but he did not reference any specific documentation or indicate that he knew one way or another whether the documentation existed. *Id.* Triola then edited the evaluation and sent a red-lined version of it to HR Generalist Esther Smiley. *Id.*

The version of the evaluation provided to Plaintiff contained many more details about Plaintiff's alleged performance problems than the version Triola reviewed. *Id.* ¶ 22. For example, the evaluation recounted one incident where Plaintiff had allegedly lost two cases of chicken due to improper rotating in February 2010. *Id.* ¶ 23. Plaintiff and Arrington, the manager on duty at the time, testified that the cases of chicken had gone bad. *Id.* When Arrington called Chavez to inform her of this, Chavez said that Plaintiff should marinate the chicken anyway. Arrington and Plaintiff agreed that it would be unsafe to prepare the expired chicken (since people could die from eating it), so they threw it away. *Id.* This raises a question of whether, based on Triola's instructions, Chavez added information to the evaluation that she knew to be false.[6]

    c.  *Disputed Facts Regarding the Position Plaintiff Was Hired For*
        *Preclude Summary Judgment*

Defendant asserts (without citation to the record) that Plaintiff was hired as a crew member. Def. Br. at 1, 5. Plaintiff, however, has put forth evidence that: until sometime in 2008, Defendant had a manager in training ("MIT") program, through which certain newly-hired employees received six weeks of training and then became assistant or general managers; when

---

[6] Because the performance evaluation prevented Plaintiff from receiving a raise, it is an adverse action in itself. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790-91 (7th Cir. 2007). Moreover, Arrington did not know anyone else who did not receive a raise in two years. SAF ¶ 38.

8

the MIT program was phased out, the employees in it were allowed to finish the program; Plaintiff was hired as a general manager trainee on a fast-track to management at the same time and in the same capacity as Joe Kersjes (a Caucasian, non-Nigerian, non-disabled, substantially younger employee); Kersjes' and Plaintiff's training differed from that of two crew members who were hired around the same time; and contrary to Defendant's policy and its treatment of Kersjes (who continued to be cross-trained and was then promoted), Plaintiff's training was stopped. *Id.* ¶¶ 24-29. These facts demonstrate that there is a question of material fact as to the position Plaintiff was hired for and as such, the training and promotions to which he was entitled. *See Malozienc v. Pacific Rail Servs.*, 606 F. Supp. 2d 837, 869-70 (N.D. Ill. 2009) (court denied summary judgment to the employer where the parties disputed whether and when the defendant had a formal training procedure that would have governed when the plaintiff received training; these facts called Defendant's explanation for why Plaintiff was not trained into doubt).

> d.      *Defendant's Arguments Contesting Plaintiff's Failure-to-Train and Failure-to-Promote Claims Have No Merit*

Defendant claims that Plaintiff cannot establish a prima facie case of failure to train or promote because Plaintiff cannot demonstrate that he was qualified for promotion and because Plaintiff was not similarly-situated to other employees – including Kersjes, Arrington, Ryan Haydon, and David Resendiz[7] – who were promoted because they performed better than Plaintiff. Def. Br. at 3-5. In this regard, Defendant's arguments are the ultimate irony. Indeed, it is precisely because of Defendant's discriminatory failure to train Plaintiff that he was not qualified for promotion. In *Gore v. U.S. Postal Serv.*, IP99-1353-C-M/S, 2000 WL 33281134 (S.D. Ind. Nov. 6, 2000), the court faced a similar situation. The defendant contended that the

---

[7] Defendant also claims that Plaintiff was not similarly-situated to Resendiz because Resendiz was never promoted. He was, however, a Kitchen Manager in Training, a position which precedes a promotion to Kitchen Manager. SAF ¶ 32. Resendiz is therefore an appropriate comparator.

9

alleged comparators were not similarly situated because they had improved the time it took to sort mail for delivery, while the plaintiff, Gore, had not. Gore argued that the alleged comparators were able to improve their scores because they were given more of an opportunity to train on a particular mail route than she was. *Id.* at *10. The court agreed with Gore, and found she had established a prima facie case of sex discrimination. *Id.* Here, as in *Gore*, other employees, such as Kersjes, Haydon, Arrington, and Resendiz, were given more training and resources than Plaintiff, enabling them to be eligible for promotion. SAF ¶¶ 30-31; Def. SOF ¶¶ 53, 55. None of these comparators were African-American or of Nigerian origin; none had complained of discrimination or requested an accommodation; and all were substantially younger than Plaintiff. *Id.* ¶ 33. These differences are sufficient to support each of Plaintiff's claims of disparate treatment.

Moreover, while Defendant argues that Arrington's and Haydon's performance ratings were higher than Plaintiff's, as shown above, there is reason to believe Plaintiff's evaluations were untruthful. Plaintiff has offered evidence that his performance met Defendant's legitimate expectations. *Id.* ¶¶ 34-37. Indeed, Chavez even admitted that he had mastered the prep station, as is required to be trained on another station. *Id.* ¶ 39. Plaintiff has thus made out a prima facie case.

Finally, all of the evidence collectively discussed above – Chavez's conduct and statements, the fabricated and/or otherwise defective documentation Defendant issued to Plaintiff, and the dispute over what position Plaintiff was hired for – suggest that Defendant's reasons for not cross-training or promoting Plaintiff were pretexts for discrimination. For all these reasons, summary judgment must therefore be denied.

10

2.  <u>Plaintiff's Evidence Raises an Inference that He Was Not Trained or Promoted Because of His Complaints about Discriminatory Treatment</u>

To understand the substance of all of Plaintiff's claims, it is imperative to understand that Plaintiff's treatment worsened materially shortly after he complained to Defendant's HR Department and then filed his EEOC charge in early 2010. This treatment contributed to the three materially adverse actions complained of previously: Plaintiff's not receiving a pay increase after the May 2010 evaluation, and Defendant's continued failure to cross-train or promote him. To show retaliation, Plaintiff must show that (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the employment action. *Hobgood*, 722 F.3d at 1036. Because Plaintiff presents evidence of causation, summary judgment must be denied on his retaliation claim.

Here, Plaintiff complained to Chavez and then to HR Generalist Julia Kim about what he perceived to be discrimination and Defendant's failure to accommodate his medical restrictions in late 2009 or early 2010. SAF ¶¶ 40-41. After she learned that Plaintiff had complained to Kim, Chavez told the Oak Park restaurant managers that she was "pissed" at Plaintiff for going to HR and that they should document every little thing Plaintiff did wrong, even if it was coming in to work 1 minute late. *Id.* ¶¶ 42-43. Plaintiff wrote a complaint detailing his grievances on or about March 1, 2010, which he provided to Kim and Chavez, and filed an EEOC charge on March 5, 2010. *Id.* ¶ 44. When Chavez learned about Plaintiff's EEOC charge, she was "freaking out" and "ranting" about it, and said that Plaintiff "had to go." *Id.* ¶ 45. On February 25, 2010, then-Area Manager Jacob Sumner, Chavez, and Arrington met with Plaintiff to discuss his complaints. Sumner apologized to Plaintiff for lapses and inconsistencies in his training and instructed Chavez to cross-train Plaintiff and abide by his medical restrictions. *Id.* ¶ 46. Rather than

11

following Sumner's directive, however, Chavez embarked on a campaign of retaliation against Plaintiff, which included the following:

- Between February 27, 2010 and March 23, 2010, Chavez or other managers made six entries in Plaintiff's development journal about what Plaintiff was doing wrong. Typically, managers write in employees' development journals every month. *Id.* ¶ 47. In the 11 months that Chavez had worked with Plaintiff before these entries, managers had written in Plaintiff's development journal five times. *Id.* ¶ 48.

- In February and March 2010, there were 17 entries regarding Plaintiff's alleged performance problems recorded in the store's Dear Diary, the book that Defendant's managers use to communicate with one another about anything that was going on in the restaurant. After March 2010, there were no Dear Diary entries regarding Plaintiff until December 2010. *Id.* ¶ 49.

- Of the 11 infractions that Plaintiff allegedly committed when he was not even clocked in, seven were dated in February 2010. *Id.* ¶ 13.

- Chavez's micromanagement of Plaintiff became more frequent and intense after his complaints. *Id.* ¶ 50. For example, Chavez required Plaintiff to sit with her for as much as 90 minutes per shift, causing him to fall behind on his prep. *Id.*

- Chavez forced Plaintiff to work on the front line at the busiest times of the day without adequate training. While Plaintiff was able to perform the work, he had a difficult time because he was not given the same resources as other employees. *Id.* ¶¶ 30, 51.

- As discussed above, Chavez (with input from Triola) drafted a performance review of Plaintiff in May 2010 which rated Plaintiff as "Needs Improvement" and may have included fabrications. *Id.* ¶ 20-21.

The sheer magnitude of the difference in Plaintiff's treatment in all of these areas, coupled with the temporal proximity between Plaintiff's complaints and these events, clearly raise a genuine issue of material fact as to whether Plaintiff's complaints were the "but-for" cause of Defendant's retaliatory acts. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2528 (2013). Summary judgment must therefore be denied.

12

**B. Plaintiff Has Raised Issues of Material Fact as to Whether His Termination Was Discriminatory and/or Retaliatory**

    1.    <u>Plaintiff's Evidence Raises an Inference that He Was Terminated Because of His Race, National Origin, Age, and/or Disability</u>

As with Defendant's alleged reasons for not promoting or training Plaintiff, its reasons for terminating Plaintiff raise substantial and disputed issues that must be resolved by the trier of fact. Three main problems plague Defendant's facts surrounding Plaintiff's termination, which are addressed in turn below. Because the facts give rise to an inference of pretext, summary judgment is precluded on both the discrimination and retaliation claims as they relate to Plaintiff's termination. *Paz,* 464 F.3d at 664.

    *a.    The Events Alleged in Plaintiff's Termination Memo Are Disputed*

Events from three dates are cited in support of Plaintiff's termination: his leaving a soiled towel in the prep area on February 28, 2011; his eating a bell pepper while cutting it on March 1, 2011; and his cursing at General Manager Veronica Garcia and throwing dishes on March 4, 2011. Pl. Resp. to Def. SOF. ¶ 39. Plaintiff vehemently denies that any of these events occurred (*id.*), which, in itself, suffices to create a material question of fact. *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849 (7th Cir. 2007) (oral testimony if admissible will normally suffice to establish a genuine issue of material fact); *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) ("Where the material facts specifically averred by one party contradict the facts averred by the party moving for summary judgment, the motion must be denied.").

Yet, Plaintiff presents far more than his own testimony. Initially, Arrington and Arlene Guerrero, who began working as a manager in the Oak Park restaurant in or after November 2010, testified that Kubicki instructed them to document any incident involving Plaintiff. SAF ¶¶ 52-54. Guerrero did not "remember documenting so much stuff on any other employee." *Id.* ¶

13

55. As to the first incident, Guerrero never saw Plaintiff leave a soiled towel in the prep area. Further, she testified that it "was done all the time" and that even though other employees did not follow procedures all the time, no one else was documented as much as Plaintiff. SAF ¶ 56. As to the second incident, Guerrero testified that, although she may have written Plaintiff up for eating a bell pepper while prepping food, she did not remember if she saw him eating the bell pepper and would not have documented the incident but for Kubicki's instruction. *Id.* ¶ 57.

Plaintiff was not even at work on the alleged date of the third incident, raising a question of fact as to whether the incident in fact occurred. *Id.* ¶ 13. Neither Arrington nor Guerrero was aware of any other employee who was disciplined for using profanity, even though employees at the Oak Park restaurant swore frequently. *Id.* ¶ 58. Guerrero, who, according to the termination memo heard Plaintiff say, "G_d damn it," never saw Plaintiff throw dishes, use profanity, or be insubordinate. *Id.*; Pl. Resp. to Def. SOF ¶ 39. Because there is a question of fact as to whether any of the events alleged to have resulted in Plaintiff's discharge in fact took place, summary judgment is precluded. *Cloe*, 712 F.3d at 1180-81.

> b.   *Defendant's Managers Disagree About Who Decided to Terminate*
>      *Plaintiff and Why He was Terminated*

Kubicki testified that after learning of the incidents alleged in the termination memo, she spoke with Triola. SAF ¶ 59. Triola told Kubicki that he would get back to her on next steps. *Id.* When Triola called her back, he instructed Kubicki to initiate Plaintiff's termination. *Id.* Triola sent Kubicki a memo with her name on it to provide Plaintiff when she terminated him. *Id.* Triola admitted he was involved in drafting the termination memo, but testified that: (1) Kubicki made the decision to terminate Plaintiff; (2) Kubicki's statement that he instructed her to initiate the termination was not correct; and (3) he did not provide any thoughts on whether Plaintiff should be terminated. *Id.* ¶ 60.

14

1003389.3

Kubicki further testified that Plaintiff was terminated based on the incidents described in the termination memo as well as his overall performance. *Id.* ¶ 61. In contrast, Triola testified that Plaintiff was terminated for insubordination only, not for performance reasons. *Id.* In further contrast, the position statement Defendant submitted to the EEOC stated that Plaintiff was terminated for unexcused absences, poor performance, inability to meet Defendant's reasonable expectations, violations of Defendant's Food Safety Policies and Procedures, and insubordination. *Id.* The only conclusion that can reasonable be drawn from these wild inconsistencies is that Defendant cannot articulate a legitimate basis for Plaintiff's termination that is not contested by its own witnesses.

In analogous cases, summary judgment is consistently denied for obvious reasons. First, Defendant's failure to identify the decision-maker renders summary judgment inappropriate. *E.E.O.C. v. C.G. Schmidt, Inc.,* 670 F. Supp. 2d 858, 870 (E.D. Wis. 2009); *Sebastian v. City of Chicago,* 05 C 2077, 2008 WL 2875255 at *22 (N.D. Ill. July 24, 2008) (denying summary judgment where the plaintiff created a question of fact as to whether the biased employee's influence exercised "singular influence" over promotion process); *Apke v. Ernst & Young,* 90-CV-3041, 1992 WL 435800 at *8 (N.D. Ill. Nov. 4, 1992) (denying summary judgment on termination claim where evidence indicated that manager who made discriminatory comments "called the shot to fire" plaintiff).

Second, Defendant's shifting explanations for terminating Plaintiff would allow a jury to "reasonably infer that the employer is 'hiding something – that is, that the true explanation is unlawful discrimination.'" *C.G. Schmidt,* 670 F. Supp. 2d at 867 (quoting *Young v. Warner-Jenkinson Co., Inc.,* 152 F.3d 1018, 1024 (8th Cir. 1998) and citing cases finding same); *Pantoja,* 495 F.3d at 851 (reversing grant of summary judgment to employer where the employer

15

alternately claimed that the plaintiff was terminated for a single incident and a combination of the incident, other infractions, and poor performance).

In *C.G. Schmidt*, the employer had offered three different explanations for the plaintiff's termination. 670 F. Supp. 2d at 869. Since these shifting explanations indicated the employer's inability to "get their story straight," the court concluded that it was inappropriate for the court to "speculate and resolve on summary judgment questions related to [the employer's] motives and the company's credibility." *Id.*[8] This case is virtually identical to *C.G. Schmidt*. Kubicki claims that Triola instructed her to terminate Plaintiff; Triola claims that Kubicki made the decision. Kubicki's and Triola's testimony also diverge on the reasons for Plaintiff's termination, and Defendant's EEOC position statement then sets forth a laundry list of reasons for Plaintiff's termination not referenced by either Kubicki or Triola. SAF ¶¶ 59-61. Therefore, as in *C.G. Schmidt*, the conflicting evidence raises an inference of pretext and permits an inference of intentional discrimination to be drawn. 670 F. Supp. 2d at 871; *see also Patmythes v. City of Janesville*, 181 F. App'x 596, 598 (7th Cir. 2006) ("Even if the plaintiff's evidence does not compel the conclusion that his employer discriminated against him, if there is a question of fact as to the believability of an employer's purported reasons for an employment decision then at a bare minimum it suffices to defeat the employer's summary judgment motion.") (internal citation and quotation omitted).

    2.    <u>Plaintiff's Evidence Raises an Inference that He Was Terminated Because of His Complaints About Discriminatory Treatment</u>

---

[8] The court in *C.G. Schmidt* also declined to consider the defendant's "honest belief" argument, finding that the rule was inapplicable to situations where an employer offers shifting explanations for its actions. 670 F. Supp. 2d at 869 n.16. Similarly here, whether Kubicki or Triola honestly believed the reports of Plaintiff's behavior is inapposite. Def. Br. at 9-10.

Defendant argues that the one-year gap between Plaintiff's EEOC charge and his termination precludes his establishing a causal link between the two. Def. Br. 15-16. But the fact that a year passed between the two events "does not mean that [he] cannot prove that retaliation caused [his] discharge; instead, it means that the timing of [his] discharge, in itself, does not support an inference of retaliation, and [he] must come forward with other evidence." *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1010 (7th Cir. 2000) (citations omitted). Plaintiff has presented such evidence. The facts discussed above surrounding Plaintiff's termination and Defendant's rationale for terminating Plaintiff render summary judgment improper.

Moreover, Triola's regular monitoring of Plaintiff following the filing of Plaintiff's EEOC charge raises a further strong inference of retaliation. From February 2010 through the end of Plaintiff's employment, Triola was the HR Director for the Central Region, and directed HR in six states. SAF ¶ 62. He never met Plaintiff and testified that he was not personally involved in monitoring Plaintiff's performance after Plaintiff filed his EEOC charge. *Id.* ¶ 20. The facts, however, tell a different story, demonstrating that Triola was regularly monitoring the situation with Plaintiff after Plaintiff filed his EEOC charge. In addition to editing Plaintiff's performance evaluation in May 2010, *id.* ¶ 20-21, Triola was working closely with Kubicki and Defendant's outside counsel to prepare documentation on Plaintiff in the months preceding Plaintiff's termination. Some examples of events in early 2011 include the following:

- On January 3, Triola asked Kubicki for copies of Plaintiff's recent development journal entries. *Id.* ¶ 63.

- On January 13, Triola told Kubicki he and Defendant's counsel were drafting a development journal entry "to deal with the attendance issue." He also wrote that Defendant's attorney would be interviewing Kubicki and then-General Manager Sai Thanawuttikorn "with the sense 'this won't end well with Bob' – we want to be prepared." *Id.*

17

- On January 20, Triola asked Thanawuttikorn to send Plaintiff's development journal, restaurant schedules, and portions of the Dear Diary to Defendant's counsel. *Id.*

- On March 8, in response to Kubicki's report that there was only one development journal entry since the beginning of the year, Triola responded, "Yah, not good." *Id.*

These facts underscore that the record here is replete with evidence of pretext. Not only do Triola's actions belie his contention that he was not a decision-maker in Plaintiff's termination, they also suggest that Defendant indeed began gathering documentation to justify Plaintiff's termination before the events in the termination memo allegedly occurred. This conflicting evidence gives rise to an inference of causation and requires a fact finder to assess Triola's credibility. Summary judgment is therefore inappropriate.[9]

### C. Plaintiff Has Raised Issues of Material Fact as to Whether Defendant Discriminated Against Him Based on His Disability and Failed to Accommodate His Medical Restrictions

#### 1. Plaintiff Raises Factual Issues As to His Disability Discrimination Claim

##### a. *Plaintiff Is Disabled*

Defendant's arguments that Plaintiff was not disabled are premised upon inaccurate statements of both law and fact. With two exceptions, all of the cases cited by Defendant were decided before the 2008 ADA Amendments Act ("ADAAA"), which was enacted for the "primary purpose" of "mak[ing] it easier for people with disabilities to obtain protection under the ADA" and which apply to this case. 29 C.F.R. § 1630.1(c)(4). Additionally, contrary to Defendant's argument, a plaintiff need not provide objective medical evidence that he is

---

[9] Defendant may argue that one of Triola's responsibilities as HR Director was to act as the liaison with outside counsel on EEOC charges, a responsibility which included gathering documents for counsel and sending updates to complaining employees' files. SAF ¶ 64. However, other than Plaintiff, Triola could not recall a single employee for whom he continued to send records to outside counsel after a position statement was filed with the EEOC. *Id.* In addition, this role does not explain why Triola was involved in drafting documents regarding Plaintiff long after the response to his EEOC charge had been filed or why Defendant's counsel wanted to interview Kubicki and Thanawuttikorn.

18

disabled. *E.E.O.C. v. AutoZone, Inc.,* 630 F.3d 635, 643 (7th Cir. 2010) ("No language in the ADA or implementing regulations states that medical testimony is required. In fact, the Supreme Court has concluded very much to the contrary."); 29 C.F.R. § 1630.2(j)(1)(v). Even if Defendant's erroneous legal standards were to be applied, it is clear that Plaintiff has raised evidence of a material issue of fact as to whether he was disabled.

To succeed on a claim under the ADA, Plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the employer took an adverse job action against him because of her disability or failed to make a reasonable accommodation. *Feldman v. Olin Corp.,* 692 F.3d 748, 753 (7th Cir. 2012), *reh'g denied* (Oct. 4, 2012) (quotation omitted). Importantly, Defendant does not contend that Plaintiff was not qualified to perform the essential functions of the job with or without reasonable accommodation. Plaintiff, therefore, "is not required to present evidence on that point, and the district court should not rely on that ground in its decision." *Cloe,* 712 F.3d at 1182 (internal quotation omitted).

Congress intended that "the primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations." 29 C.F.R. § 1630.2(j)(1)(iii). Therefore, the "question of whether an individual meets the definition of disability under [the ADA] should not demand extensive analysis." *Id.* at § 1630.1(c)(4); *Horgan v. Simmons,* 704 F. Supp. 2d 814, 818-19 (N.D. Ill. 2010). To establish that Plaintiff is "disabled" under the ADAAA, he must (a) have a physical or mental impairment that substantially limits one or more major life activities; (b) have a record of such an impairment; or (c) be regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)-(C). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life

19

1003389.3

activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). Rather, the question is whether Plaintiff is limited when "compared to most people in the general population." *Id.* at § 1630.2(j)(4)(i). Notably, the Seventh Circuit has found that restrictions from a physician may contribute to a finding that a plaintiff is disabled. *Feldman*, 692 F.3d at 754 (reversing district court's finding that plaintiff was not disabled where his doctor believed that his sleeping problems were substantial enough to require a change in his work schedule).

Plaintiff's evidence demonstrates that he suffers from several disabling impairments, including a hernia, eye disease, hypertension, and kidney disease. The undisputed evidence demonstrates that these impairments substantially limited him in several major life activities, including lifting, seeing, standing, and walking. *See* 29 C.F.R. § 1630.2(i)(1)(i). Plaintiff's hernia made it very difficult for him to lift, and lifting heavy items caused him extreme pain. SAF ¶ 65. For that reason, Plaintiff's doctors imposed a 10-pound lifting restriction on him. *Id.* In similar circumstances, the court in *Heatherly v. Portillo's Hot Dogs, Inc.,* 11 C 8480, 2013 WL 3790909 at *6 (N.D. Ill. July 19, 2013), found that the plaintiff had presented sufficient evidence to create a triable issue of fact as to whether she was disabled under the ADAAA.[10] Similarly, Plaintiff's eye disease interferes with his vision, prevents him from driving, causes him headaches, makes it difficult for him to read voluminous documents, and causes his eye to leak fluid. SAF ¶ 66. When he was first diagnosed with an eye disorder in approximately September 2010, he could not see out of his right eye. *Id.* Plaintiff's doctor stated that Plaintiff had "decreased vision especially at night and should not be driving at night." *Id.* ¶ 67. In addition, the injuries Plaintiff

---

[10] Defendant's argument that a hernia is not a disability as a matter of law because it is transitory is simply wrong. The cases it cites in support of its argument were decided before the ADAAA went into effect. The ADAAA regulations expressly provide that "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section." 29 C.F.R. § 1630.2(j)(ix); *see also Heatherly*, 2013 WL 3790909 at *6 (rejecting the defendant's argument that the transitory nature of the plaintiff's impairment prevented the impairment from being a disability).

suffered when he slipped and fell while taking out the garbage at work in December 2010 substantially limited his ability to lift, stand, and walk. *Id.* ¶ 78-79. Since Plaintiff has put forth evidence that his medical impairments substantially limited his ability to lift, see, stand, and walk, there is clearly a factual issue as to whether he is disabled.

            *b.*    *Defendant Took an Adverse Action Due to Plaintiff's Disability*

Based on the facts presented in Section II.A. IN ADDITION, II.B. above, Plaintiff has put forth circumstantial evidence of discrimination based on his disabilities. Moreover, Chavez made other statements to Plaintiff that constitute additional direct evidence of disability discrimination. On one occasion after Plaintiff had presented Chavez with a note from his doctor, Chavez told him that he was terminated. SAF ¶ 69. Plaintiff asked to speak with someone in HR, and Chavez called Kubicki, who told Chavez that she could not terminate Plaintiff. *Id.* At that point, Chavez burst out of her office, yelling expletives, and saying, "I can't believe this. . . . I can't get rid of this guy for nothing." *Id.* On other occasions, Chavez told Plaintiff, "You're sick a lot, I don't think this job is for you," and that he was too sick to work for Defendant. *Id.* ¶ 70. Furthermore, Chavez admitted that Plaintiff's hours were reduced after he informed her of his vision restrictions, which prevented him from driving at night. *Id.* ¶ 71. This, on its own, constitutes an adverse action. *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010). When Chavez's statements and actions are considered together, they indicate her hostility toward Plaintiff's disabilities and require denial of summary judgment.

        2.    <u>Plaintiff Raises Factual Issues as to His Failure-to-Accommodate Claim</u>

            *a.*    *Plaintiff's Failure-to-Accommodate Claim Is Adequately Pled*

A plaintiff may bring any claim that is "like or reasonably related" to the allegations in the underlying EEOC charge and could reasonably be expected to grow out of an investigation of

the charge. *Kristufek v. Hussmann Foodservice Co., Toastmaster Div.*, 985 F.2d 364, 368 (7th Cir. 1993); *Wamack*, 836 F. Supp. 2d at 797 (quotation omitted). This standard is liberal in order to effectuate the remedial purposes of Title VII. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110-11 (7th Cir.1992) (quotation omitted). When evaluating whether a claim is like or reasonably related to the allegations in a charge, the Seventh Circuit has instructed that written "[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Wamack*, 836 F. Supp. 2d at 798 n.4 (quoting *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 865 (7th Cir. 2010)); *Rush*, 966 F.2d at 1110-11 (finding that claims not expressly alleged in EEOC charge were sufficiently alleged where the plaintiff submitted a handwritten "affidavit" to the EEOC).

Here, in addition to alleging in his EEOC charge that he was harassed based on his disability, Plaintiff submitted a copy of the complaint he filed with Defendant's HR Department to the EEOC, which stated, "against the weight requirements of my current position, I have had to lift garbage cans that weigh in excess of 100 lbs., as a result of which I have developed [an] inguinal hernia that is bothersome and painful." SAF ¶ 44. Plaintiff's submission of his internal complaint makes it clear that he intended the EEOC to investigate his failure-to-accommodate allegations. Moreover, because of this internal complaint, there can be no question that Defendant was on notice of Plaintiff's failure-to-accommodate claim.[11] *See Kristufek*, 985 F.2d at 368-69. His failure-to-accommodate claim is therefore properly before this Court.

> *b.      Defendant Failed to Reasonably Accommodate Plaintiff*

To establish a claim for failure to accommodate, Plaintiff must show that: (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the

---

[11] Defendant's assertion that the EEOC did not investigate a failure-to-accommodate claim has no support in the record. Def. Br. at 14.

employer failed to reasonably accommodate the disability. *E.E.O.C. v. Sears, Roebuck & Co.,* 417 F.3d 789, 797 (7th Cir. 2005). As discussed above, Defendant does not challenge that Plaintiff was a qualified individual with a disability. Further, Defendant was aware of Plaintiff's disabilities and Plaintiff requested accommodations for them. SAF ¶¶ 65-68. With regard to its duty to accommodate, however, Defendant "flunked" its obligations under the ADA, which required Defendant to "engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000) (quotation omitted). It did not do so, contrary to the law and its own procedures.

According to Defendant's policies, when an employee of Defendant informs his general manager that he requires an accommodation, the general manager is supposed to discuss with the employee whether and how the employee will be accommodated. SAF ¶ 72. In addition, the area manager and HR are always involved in responding to an employee's request for accommodation. *Id.* ¶ 73. Here, however, then-Area Manager Kubicki could not remember if she was involved in talking with Plaintiff about accommodations. The evidence suggests that she was not involved: in January 2011 she told Triola that Plaintiff never provided documentation of his need for accommodations, long after he had provided it. *Id.* More egregiously, Chavez threw away doctor's notes that Plaintiff had provided on several occasions. *Id.* ¶ 74. Indeed, the equivocal testimony of each of Defendant's witnesses – who were the very individuals who were supposed to assist with the accommodation process – raises genuine issues of fact as to whether Plaintiff's restrictions were accommodated. *Id* ¶ 75.

In addition, Plaintiff's co-workers testified that they saw him lift numerous items weighing more than 10 pounds after Defendant was aware of his restrictions. *Id.* ¶ 77. After

23

Chavez refused to accommodate his lifting restriction, Plaintiff complained to Kim and requested to meet with then-Area Manager Sumner. *Id.* ¶ 76. On February 25, 2010, when Chavez, Arrington, and Sumner met with Plaintiff, Sumner instructed Chavez to accommodate Plaintiff's medical restrictions. *Id.* ¶¶ 46, 76. Chavez may have stopped having Plaintiff take out garbage – which could weigh up to 50 or 60 pounds – for a few days, but she thereafter again required him to take out the garbage. *Id.* ¶¶ 76-77. When Plaintiff informed Chavez that he would need to work during the day because of his vision restrictions, she said that she would schedule Plaintiff when she could, but "wasn't going to change the whole schedule around for one person." *Id.* ¶ 71. Plaintiff could have worked in other positions, such as opening tortilla or salsas. *Id.*

Finally, after Plaintiff injured his hip and arm while taking out the garbage at work on December 23, 2010 (which demonstrates in itself that Defendant was not abiding by his restrictions), Thanawuttikorn refused to accommodate the limitations imposed by Defendant's own physician, who treated Plaintiff. *Id.* ¶ 78-79. As a result, the treating physician told Defendant that Plaintiff could not work until he was released, requiring him to miss more than two weeks of work. *Id.* ¶¶ 7-9; Def. SOF ¶ 80.[12] In light of the abundant evidence that Defendant shirked its responsibility to engage in an interactive process with Plaintiff or accommodate his restrictions, summary judgment must be denied on this claim.

**D.     Plaintiff Has Raised Issues of Material Fact as to Whether Defendant Terminated Him Because of His Claim for Workers' Compensation Benefits**

To maintain a claim for retaliation based on filing a claim for workers' compensation benefits, Plaintiff must prove: (1) that he was an employee of Defendant before injury; (2) that he exercised a right granted by the Workers' Compensation Act; and (3) a causal relationship

---

[12] The short time gap between Defendant's refusal to accommodate Plaintiff's restrictions following his workplace accident and his termination also give rise to an inference of causation that his termination was caused by his disabilities. SAF ¶ __. *Boumehdi*, 489 F.3d at 793.

24

between his discharge and the exercise of his right. *Siekierka v. United Steel Deck, Inc.*, 373 Ill. App. 3d 214, 221, 868 N.E.2d 374, 380 (1st Dist. 2007). Defendant does not dispute the first two elements. Consequently, only the element of causation is in dispute. The ultimate issue with respect to causation is the employer's motive in discharging the employee. *Id.* The element of causation is not demonstrated if the employer has a valid, non-pretextual basis for discharging the employee. *Id.* at 222, 380 (quotation omitted). Here, as discussed above, the facts suggest that Defendant's motive in terminating Plaintiff was pretextual. *See Scott-Riley v. Mullins Food Prods., Inc.*, 391 F. Supp. 2d 707, 718 (N.D. Ill. 2005) (denying summary judgment on retaliatory discharge claim where the plaintiff produced evidence of pretext as to her discrimination claim).

Further, because Thanawuttikorn refused to accommodate Plaintiff's restrictions following his workplace accident, he was required to remain off work from January 21, 2011 to February 9, 2011. Pl. Resp. to Def. SOF ¶ 80; SAF ¶ 79. He was discharged from treatment on February 25, 2011. Pl. Resp. to SOF ¶ 80. Upon his return to work, Plaintiff asked Thanawuttikorn to be paid for the days he missed. SAF ¶ 80. He was terminated on March 11, 2011. Pl. Resp. to Def. SOF ¶ 41. The short time frame between Plaintiff's request for compensation and his termination raises an inference of causation. *E.g., Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011). For this additional reason, Plaintiff has raised questions of fact as to whether Defendant's proffered reasons for discharging him were pretextual. As such, Defendant's motion should be denied.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion for Summary Judgment be denied in its entirety.

25

1003389.3

Respectfully submitted,

Tubonimi Bob-Manuel

By:   /s/ Lindsey M. Marcus - 6297111
          lmm@franczek.com

David P. Radelet - 6181286
dpr@franczek.com
Lindsey M. Marcus - 6297111
lmm@franczek.com
Franczek Radelet PC
300 South Wacker Drive
Suite 3400
Chicago, IL 60606
(312) 986-0300
Dated:  October 4, 2013

1003389.3

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2013, I served the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO SUMMARY JUDGMENT** to the following attorneys via electronic service through the Court's CM/ECF filing system:

> Tanya E. Milligan
> Jacqueline Guesno
> Danielle Felder
> Messner & Reeves, LLC
> 1430 Wynkoop Street
> Suite 300
> Denver, CO  80202
>
> David Stein
> Pretzel & Stouffer, Chartered
> One South Wacker Drive
> Suite 2500
> Chicago, IL  60606

> By: /s/Lindsey M. Marcus– 6297111
> lmm@franczek.com

> David P. Radelet – 6181286
> dpr@franczek.com
> Lindsey M. Marcus – 6297111
> lmm@franczek.com
> Franczek Radelet P.C.
> 300 South Wacker Drive
> Suite 3400
> Chicago, IL  60606
> (312) 986-0300

1003389.3